**Suzanne MATTHEWS, Plaintiff,**

v.

**CORNING INCORPORATED, David Dawson–Elli, Michael Moore, Cynthia Giroux, and Marc Giroux, as aiders and abettors, Defendants.**

No. 08–CV–6323 EAW.

United States District Court,
W.D. New York.

Signed Dec. 31, 2014.

Suzanne M. Matthews, Horseheads, NY, pro se.

Mimi C. Satter, Satter & Andrews LLP, Syracuse, NY, for Plaintiff.

Andrew M. Burns, Jill K. Schultz, Davidson Fink LLP, Rochester, NY, for Defendants.

## DECISION AND ORDER

ELIZABETH A. WOLFORD, District Judge.

### *DISCUSSION*

Plaintiff Suzanne Matthews ("Plaintiff"), proceeding *pro se,* brings this action against Corning Incorporated ("Corning"), David Dawson–Elli, Michael Moore, Cynthia Giroux, and Marc Giroux (collectively, the "Defendants"), alleging gender discrimination and retaliation, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.,* ("Title VII") and the New York State Executive Law §§ 290 *et seq.* (Dkt. 50). Presently before the Court is Defendants' motion for summary judgment and Plaintiff's cross-motion for summary judgment. (Dkt. 186, 199, 208). Because there is no disputed issue of material fact that Plaintiff cannot establish a gender discrimination or retaliation claim, Defendants' motion for summary judgment is granted, and Plaintiffs motion for summary judgment is denied.

### *FACTUAL BACKGROUND*

Corning is a multi-national corporation with approximately 25,000 employees, and is a world leader in specialty glass and ceramics. (Dkt. 186–2 at ¶ 1; Dkt. 208–5 at ¶ 1). Corning hired Plaintiff in 1994 as an "at will" employee. (Dkt. 186–2 at ¶ 3; Dkt. 208–5 at ¶ 3).

While Plaintiff was at Corning, she had an informal coaching relationship with Johnny Terry ("Terry"), who at the time was a project engineer in the MT & E Division at Corning. (Dkt. 186–8 at ¶ 5; Dkt. 208–3 at ¶¶ 1–2). The MT & E Division is the corporate engineering group

that provides engineering resources for the business units and projects within Corning. (Dkt. 186–8 at ¶ 4). Plaintiff told Terry that she hoped to be promoted from a C-band engineer to a D-band engineer. (Dkt. 186–8 at ¶ 10; Dkt. 208–3 at ¶ 5). In September 2003, Terry became the manager at MT & E and Plaintiff's direct supervisor, during which time he worked more closely with Plaintiff, and began talking with her about long-term career goals and development. (Dkt. 186–8 at ¶ 6; Dkt. 208–3 at ¶ 2).

In January 2005, Plaintiff was assigned to work on the "SiOG project," which involved a team of scientists working together at Coming's Sullivan Park facility. (Dkt. 186–2 at ¶ 9; Dkt. 208–5 at ¶ 9). Plaintiff was a "Process Leader" on the project. (Dkt. 186–2 at ¶ 9; Dkt. 208–5 at ¶ 9). Plaintiff's project manager on the SiOG project was Jeffrey Cites ("Cites"). (Dkt. 186–2 at ¶ 11; Dkt. 208–5 at ¶ 11). Karen Madison ("Madison"), a human resources manager at Corning, stated that the SiOG project was "diverse, with a number of women and minorities on the project." (Dkt. 186–9 at ¶ 6). Cites contends that beginning in early 2006, he developed concerns about Plaintiff's performance on the SiOG project, including that Plaintiff did not spend enough time in the lab; that she went on a business trip funded by Corning that was "a waste of time and money," which "showed extremely poor judgment on [Plaintiff's] part;" that she did not work well with others; and that she was not professional. (Dkt. 209–2 at ¶¶ 7–9).

Terry contends he had concerns regarding Plaintiff's leadership skills on the SiOG project and therefore gave her feedback regarding how to improve those skills (Dkt. 186–8 at ¶ 9); however, Plaintiff contends that Terry "never expressed concerns about [her] leadership skills" (Dkt. 208–3 at ¶ 4). Instead, Plaintiff contends

that Terry said that Cites had "poor leadership skills," that Cites "knew [Plaintiff] was a better leader than him," and that to "go to the next level" Plaintiff needed to "accept the mistreatment on the SiOG project" and "refrain from saying the words 'harassment' or 'hostile work environment'...." (*Id.*).

Plaintiff spoke to Terry about a promotion from C-band engineer to D-band engineer. (Dkt. 186–8 at ¶ 10; Dkt. 208–3 at ¶ 5). Terry contends that he explained to Plaintiff that a promotion to D-band was not automatic, and not everyone at Corning received such a promotion. (Dkt. 186–8 at ¶ 10). Terry also explained to Plaintiff that she was not yet ready for a promotion based on the objective criteria required by Corning to receive a promotion to D-band because her leadership, management, and conflict resolution skills needed improvement. (*Id.* at ¶¶ 15–16). Defendants describe these objective criteria to include "knowledge," "problem solving," "discretion/latitude," "impact," and "liaison" skills; D-band engineers are expected to have expertise in the aforementioned criteria, while expectations for C-band engineers are not as high. (*Id.* at ¶¶ 11–14). However, Plaintiff contends that Terry told her that promotion to D-band was "political," and that it would be necessary to obtain the support of "Jeff Knutson and the directors on the MTE leadership team" for her to achieve a D-band promotion. (Dkt. 208–3 at ¶¶ 5, 13).

During the time Plaintiff was "coached" by Terry, she expressed interest in other employment positions. (Dkt. 186–8 at ¶¶ 17–21; Dkt. 208–3 at ¶¶ 15–20). Plaintiff expressed interest in the following positions:

(1) Tank Supervisor (Dkt. 186–8 at ¶ 17; Dkt. 186–10 at 32:23–25, 33:1–4). The Tank Supervisor position was filled during the time that Plaintiff

was in the Pressware division at Corning and before she started on the SiOG project. (Dkt. 186–10 at 32:23–25, 33:1–4);

(2) Process Engineering Supervisor/Manager (Dkt. 186–8 at ¶ 18; Dkt. 186–10 at 40:13–21). This position was a D-band position, and was filled by a woman named Jelena Langensipen, in November 2005. (Dkt. 186–8 at ¶ 18; Dkt. 186–10 at 40:6–19; *see also* Dkt. 186–9 at ¶ 19 and Ex. D);

(3) Manufacturing Leader (Dkt. 186–8 at ¶ 19; Dkt. 186–10 at 8:6–17). Terry contends that this position was also a D-band position. (Dkt. 186–8 at ¶ 19). Plaintiff asked for Terry's endorsement for the position; however, Terry and Cites did not believe that Plaintiff had the skill set for this position. (Dkt. 186–8 at ¶ 19; Dkt. 186–10 at 9:7–11). Terry and Cites contend that the decision to select Steven Good for the Manufacturing Leader position rather than Plaintiff was objective and had nothing to do with Plaintiff's gender (Dkt. 186–8 at ¶ 19; Dkt. 209–4 at ¶ 4), and that Good was selected for the position because he had significant project management and functional management experience. (Dkt. 209–2 at ¶ 13).

(4) Process Engineering Supervisor (Dkt. 186–8 at ¶ 20; Dkt. 186–10 at 20:6–19). Terry contends that this was also a D-band position. (Dkt. 186–8 at ¶ 20). Terry states that he informed Plaintiff that she was not a candidate because Corning already had a candidate for the position, Max Bliss. (*Id.*). Terry explains that Bliss was awarded the position because he was "objectively more qualified for the position than [Plaintiff]," as Bliss had previously worked as a project leader and supervised a team, including approximately nine direct reports; had demonstrated superior leadership and interpersonal skills and an ability to handle technical, interpersonal, and high-pressure situations; and was a mid-career hire with additional job experience from other employers. (*Id.*). Plaintiff contends that Terry never informed her that the supervisory position was filled, nor that she was not a candidate, but rather that there were two project supervisor positions available. (Dkt. 208–3 at ¶ 16). Plaintiff contends that Terry told her that he intended to promote both her and Bliss to supervisor positions, but that it would be easier to promote Bliss. (*Id.*). Plaintiff maintains that she had "significantly more functional supervisory experience than Max...." (*Id.* at ¶ 17); and,

(5) Innovation Leader (Dkt. 186–8 at ¶ 21; Dkt. 186–10 at 45:9–18). Terry states that he encouraged Plaintiff to apply for this C-band position. (Dkt. 186–8 at ¶ 21). Terry further contends that he believed that Plaintiff had an informational interview for the position, but Corning later decided not to fill it, and no one received the position. (*Id.*). Terry contends that Corning will sometimes post a position, but then not fill it based on business or economic reasons. (*Id.*). Madison testified that she was not able to find any record of the Innovation Leader position having been posted. (Dkt. 186–9 at ¶ 20).

Plaintiff also contends generally that other positions for which she attempted to apply were cancelled. (Dkt. 208–3 at ¶ 20). Despite Plaintiff's contentions that she was denied various promotions based on her

gender, she admits that she has received two promotions after transferring to the MT & E Division at Corning. (Dkt. 208–4 at ¶ 63).

Around April or May of 2006, Plaintiff reported to Terry that Cites and others on the SiOG project were not paying attention to her in group meetings, and that Cites raised his voice when speaking with her. (Dkt. 186–8 at ¶ 22; Dkt. 208–3 at ¶ 21–22). Terry states that in November 2006, Plaintiff informed him that she was experiencing harassment on the SiOG Project, and that she wanted to leave the SiOG project. (Dkt. 186–8 at ¶ 23).

In November 2006, Plaintiff made an internal complaint of gender discrimination contending that the SiOG project environment was not inclusive of women and minorities. (Dkt. 186–8 at ¶¶ 23–24; Dkt. 208–3 at ¶ 8). Plaintiff contends that she told Cites that she was leaving the SiOG project because of his failure to maintain an environment that was inclusive of women and minorities, and that Cites responded by raising his voice and pointing his finger in her face. (Dkt. 208–3 at ¶ 53).

In late fall 2006, Madison stated that she received a notebook from Plaintiff entitled "SiOG Resignation Decision Suzanne Matthews," dated "11/20/06." (Dkt. 186–9 at ¶ 7). Madison reviewed the notebook, interpreted the contents to be an internal complaint by Plaintiff against Corning, including allegations of a hostile work environment, and initiated an investigation of Plaintiff's complaint pursuant to Coming's policies. (Id. at ¶ 8). Janet Williams ("Williams"), an experienced investigator from Coming's Security division, conducted the interviews. (Id. at ¶ 9).

Corning contends that it undertook the following process to investigate Plaintiff's complaint:

(1) Identified the employees whom Williams would interview. In total, 22 employees were identified. Most of the interviewees were from the SiOG project, and included 8 women and 5 minorities;

(2) Madison worked with Williams to develop a questionnaire for Williams to use during the interviews;

(3) Contacted each individual to be interviewed and informed them that they would receive a call from Williams; and,

(4) Williams interviewed the employees using the questionnaire, with appropriate follow-up questions. Williams had one other person in the room with her during the interviews to take and type up notes from the interviews.

(Dkt. 186–9 at ¶ 10). Following the interviews, human resources concluded that a hostile work environment did not exist on the SiOG team, and that women and minorities were treated equally. (Id. at ¶ 12). Defendants contend that several witnesses stated that Plaintiff herself had communication and interaction issues with others that impacted her effectiveness. (Id.; see also Dkt. 186–9 at Ex. B).[1] Madison informed Plaintiff that Corning took her claims seriously and conducted a thorough investigation of her claims; however, there was no evidence of a hostile work environment on the SiOG project team. (Dkt. 186–9 at ¶ 13). Madison and Plaintiff also discussed Coming's willingness to accommodate Plaintiff's request for a transfer to the OLED project. (Id.). Plaintiff states that at that point, she decided to leave the SiOG project. (Dkt. 186–10 at 17:17–21). Plaintiff's position on the SiOG project was filled by an African–American woman named Robin Walton. (Dkt. 208–3 at ¶ 39; Dkt. 209–2 at ¶ 39).

---

1. The interview questionnaires and responses, found at Exhibit B to the Madison Affidavit (Dkt. 186–9 at 12–24), were filed under seal by Defendants on February 21, 2012.

Plaintiff contends that her last day on the SiOG project was December 8, 2006. (Dkt. 208–3 at ¶ 55). Plaintiff thereafter received a new assignment on the OLED project. (Dkt. 186–8 at ¶ 25; Dkt. 208–3 at ¶ 31). Plaintiff claims that the OLED project was "a diverse team with a number of women and minorities working on the project," and "lacked much of the disfunctionality of the SiOG project . . . ." (Dkt. 208–3 at ¶ 31).

Madison contends that Plaintiff's transfer to the OLED project was a lateral move, wherein Plaintiff's title, pay grade, and benefits remained the same. (Dkt. 186–9 at ¶ 14). Madison further contends that Plaintiff continues to work as a Senior Process Engineer in the Display Technologies group in the MT & E Division at Corning, which is a "growth area" for Corning. (Id.). Madison also notes that it is "very common" for employees to move assignments across divisions. (Id.). Madison contends that Corning provided Plaintiff with an executive coach to support her in her new assignment (id. at ¶ 15), and in 2011, Plaintiff received a raise commensurate with her peers in the MT & E Division (id. at ¶ 21).

Plaintiff contends that Defendants' alleged refusal to reward her for her performance, blocking her participation at meetings, and otherwise preventing her from becoming a candidate for a manufacturing leader position, while all male process leaders were recognized for their work, constitutes gender discrimination. (Dkt. 208–3 at ¶ 10). Plaintiff further asserts that women and minorities have been historically underrepresented in leadership positions at Corning. (Id. at ¶ 11). Plaintiff contends that in 2006, all female process leaders were given cubicles as offices, while all male process leaders were assigned window offices with doors; that two men received promotions, but Plaintiff and another African–American woman did not receive promotions; and that Corning has no corporate policy requiring that airfare or childcare expenses be provided for an employee's children when the employee is assigned to work at another location. (Id. at ¶¶ 37–40). Plaintiff further contends that in early 2006, she discovered that people were calling her the "cleaning bitch." (Id. at ¶ 45). Finally, Plaintiff contends that Jianwei Feng, another woman on the SiOG project, told Plaintiff that she was mistreated by Michael Moore ("Moore") because Moore would not allow Feng to speak at meetings without asking permission, and that Moore did not give Feng the opportunity to work to her capability. (Id. at ¶ 50). Cites contends that Plaintiff and other minorities were not treated differently on the SiOG project, and that conflicts in the group "were centered on [Plaintiff] because of her inability to interact with other people." (Dkt. 209–2 at ¶ 17).

Plaintiff also contends that she was retaliated against for filing the November 2006 internal complaint regarding gender discrimination. (Dkt. 186–10 at 26:7–23). Plaintiff states that she has observed "numerous instances of intentional retaliation against anyone who refuses to support workplace initiatives or changes" at Corning, which Plaintiff describes as "Corning Justice." (Dkt. 208–3 at ¶ 9). In her affidavit, Plaintiff states that Terry told her that she did not know how to "drop things," (id. at ¶ 5); that if Jeff Knutson found out about Plaintiff's issues on the SiOG project he would "cancel [her] career" (id. at ¶ 6); that when she told Cites she was leaving the SiOG project due to his failure to maintain an environment inclusive of women and minorities, Cites said that he would be "backed all the way to David Morse" if Plaintiff repeated her statement (id. at ¶ 8); and that when Plaintiff asked Williams if Plaintiff would be protected from retaliation for implicat-

ing David Dawson–Elli in her complaint, Williams said "no, I cannot promise that" (Dkt. 208–4 at ¶ 67).

Plaintiff further contends that several Corning employees, including Moore, David Dawson–Elli, Cynthia Giroux, and Marc Giroux, sabotaged her career at Corning, and took part in the gender discrimination and retaliation against her. (Dkt. 203–8 at ¶¶ 21, 30–31, 35). These individual defendants dispute Plaintiff's allegations against them. (*See* Dkt. 186–4; Dkt. 186–5; Dkt. 186–6; and Dkt. 186–7).

### *PROCEDURAL HISTORY*

Plaintiff, acting *pro se,* filed a charge of discrimination with the New York State Division of Human Rights ("NYSDHR") and the Equal Employment Opportunity Commission ("EEOC") on May 1, 2007. (Dkt. 1 at 8–9; Dkt. 162 at 2). The charge alleged that Corning subjected Plaintiff to sex-based discrimination and retaliation. (Dkt. 1 at 8–9). The EEOC found that there was insufficient evidence to substantiate Plaintiff's claims, and issued a right to sue letter on April 28, 2008. (*Id.* at 10).

Plaintiff, again acting *pro se,* filed her federal complaint against Corning on July 23, 2008, alleging gender discrimination and retaliation. (Dkt. 1). Defendant filed an answer on November 6, 2008. (Dkt. 4). The case was referred to United States Magistrate Judge Marian W. Payson for discovery. (Dkt. 5). On June 30, 2009, Plaintiff filed an unopposed motion to amend her complaint, to add Moore, Cynthia Giroux, Marc Giroux, and David Dawson–Eli as "aiders and abettors" to Corning's alleged discrimination and retaliation. (Dkt. 26, 26–2). On October 19, 2009, Plaintiff filed an amended complaint (Dkt.

50), and Defendants filed a motion to dismiss portions of the amended complaint on November 17, 2009 (Dkt. 53). On September 16, 2010, United States District Judge David G. Larimer granted Defendants' motion and dismissed Plaintiff's claims of discrimination and retaliation as alleged in paragraphs 18–67 of the amended complaint on the ground that Plaintiff had failed to exhaust her administrative remedies by timely filing a charge of discrimination ("The September 16, 2010 Decision and Order"). (Dkt. 162 at 7). Judge Larimer noted that because Plaintiff filed her administrative charge on April 30, 2007, only acts occurring on or after July 4, 2006, were actionable. (*Id.* at 4). Judge Larimer also dismissed Plaintiffs claims concerning generalized denials of promotions and a hostile work environment for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). (*Id.* at 7).

On August 3, 2011, Defendants filed an answer to Plaintiff's amended complaint. (Dkt. 179). Defendants filed a motion for summary judgment as to Plaintiff's remaining claims on February 21, 2012. (Dkt. 186). On August 1, 2012, Plaintiff filed a sealed cross-motion for summary judgment and a memorandum in opposition to Defendants' motion for summary judgment. (Dkt. 199). On August 3, 2012, Plaintiff filed a motion to reorganize her August 1, 2012 filing and to remove confidential material from the docket. (Dkt. 201). Plaintiff's motion was granted on August 15, 2012, and the Court directed Plaintiff to submit a redacted cross-motion for summary judgment. (Dkt. 205). On August 23, 2012, Plaintiff refiled her cross-motion as a redacted cross-motion for summary judgment. (Dkt. 208).[2] On Septem-

---

**2.** Plaintiff submitted with her motion papers a "confidential appendix of exhibits," consisting of almost 250 pages of charts, notes, graphs, emails, deposition excerpts, and affidavits. The Court has reviewed the confidential appendix of exhibits, and finds that many of the exhibits submitted by Plaintiff are inadmissible due to the fact that they are hearsay, lack a foundation, and/or are irrelevant. For example, the charts, graphs, and notes that

ber 29, 2012, Defendants filed a reply to their motion for summary judgment, and a response in opposition to Plaintiff's cross-motion. (Dkt. 209). Plaintiff filed a reply to her cross-motion on November 2, 2012. (Dkt. 210).

On February 21, 2014, the case was transferred to the undersigned. (Dkt. 213).

## DISCUSSION

### I. Legal Standard on a Motion for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party. *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). Once the moving party has met its burden, the opposing party " 'must do more than simply show that there is some metaphysical doubt as to the material facts.... [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial.*' " *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir.2002) (quoting *Matsushita Elec.*, 475 U.S. at 586–87, 106 S.Ct. 1348) (emphasis in original). "[T]he mere existence

of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment...." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original).

■ Although a *pro se* litigant's pleadings should be liberally construed "to raise the strongest arguments that they suggest," *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir.2009) (internal quotation and citation omitted), "proceeding pro se does not otherwise relieve [a litigant] from the usual requirements of summary judgment and if a pro se party's allegation is not supported by evidence, then the litigant will not overcome a motion for summary judgment," *Toliver v. City of New York*, No. 10 Civ. 3165(PAC)(JCF), 2013 U.S. Dist. LEXIS 186431, at *10 (S.D.N.Y. Dec. 13, 2013), *adopted*, No. 10 Civ. 3165(PAC)(JCF), 2014 U.S. Dist. LEXIS 39140 (S.D.N.Y. Mar. 24, 2014) (alteration in original) (internal quotations and citation omitted). *See also Gittens v. Garlocks Sealing Techs.*, 19 F.Supp.2d 104, 110 (W.D.N.Y. 1998) (although a court should grant "significant liberality in how *pro se* pleadings are construed ... proceeding *pro se* does not otherwise relieve a litigant from the usual requirements of summary judgment.").

### II. Plaintiff's Gender Discrimination Claims

■ Plaintiff's first and second causes of action are for gender discrimination in

---

Plaintiff herself created are unsupported and conclusory documents, and are inadmissible as evidence on a summary judgment motion. The Court does not consider the inadmissible documents in resolving the parties' motions. *See Flaherty v. Filardi*, 03 Civ. 2167(LTS)(HBP), 2007 WL 163112, at *5, 2007 U.S. Dist. LEXIS 4595, at *12 (S.D.N.Y. Jan. 24, 2007) (disregarding inadmissible por-

tions of plaintiff's affidavit in analyzing motion for summary judgment, and noting that the Court "will not expend limited judicial resources scrutinizing each line, especially in light of the fact that the Court concludes that the admissibility of Plaintiffs Affirmation does not affect the resolution of her motion for partial summary judgment.").

violation of Title VII and the NYSHRL. (Dkt. 50 at ¶¶ 119–26). The Court interprets Plaintiff's claims of gender discrimination to be based on an alleged failure to promote and a hostile work environment. Because the standards for employment discrimination claims under Title VII and the NYSHRL are identical, *see Hyek v. Field Support Servs., Inc.*, 461 Fed.Appx. 59, 60 (2d Cir.2012) (stating that the outcome of an employment discrimination claim made pursuant to the NYSHRL is the same as it is under Title VII), the Court will address Plaintiff's Title VII and NYSHRL claims together.

## A. Plaintiff's Failure to Promote Claims

■ To establish a case of gender discrimination, a plaintiff must demonstrate: "(1) she was within the protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination." *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 498 (2d Cir.2009). Gender discrimination claims are assessed using the burden-shifting framework established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See also Demoret v. Zegarelli*, 451 F.3d 140, 151 (2d Cir.2006) (applying burden-shifting framework to gender discrimination claim). As explained by the Second Circuit Court of Appeals:

> [o]nce a plaintiff has established a prima facie case of age or gender discrimination, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the [adverse act]. If the defendant carries that burden, the burden shifts back to the plaintiff to demonstrate by competent evidence that the legitimate reasons offered by the defendant were not its true reasons, but

were a pretext for discrimination. However, the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.

*Leibowitz*, 584 F.3d at 498–99 (internal quotations and citations omitted) (alteration in original).

As an initial matter, some of Plaintiff's failure to promote claims were previously dismissed by the September 16, 2010 Decision and Order. (Dkt. 162). Plaintiff's alleged denial of promotions to Tank Supervisor and Process Engineering Supervisor/Manager occurred before July 4, 2006, and are therefore time-barred. (*See* Dkt. 186–8 at ¶ 18; Dkt. 186–9 at Ex. D (Process Engineering Supervisor/Manager position filled in November 2005); Dkt. 186–10 at 21:8–11 (Process Engineering Supervisor/Manager position was filled in "2005, 2006"); Dkt. 186–9 at ¶ 19 (Process Engineering Supervisor/Manager filled on November 3, 2005); Dkt. 186–8 at ¶ 17 (Plaintiff expressed interest in Tank Supervisor in early 2006); Dkt. 186–10 at 32:23–25, 33:2–8 (Plaintiff was interested in Tank Supervisor when she was in Pressware division, before her work on the SiOG project)).

With respect to Plaintiff's remaining failure to promote claims, the Court evaluates the claims pursuant to the *McDonnell Douglas* analysis. Plaintiff not only fails to establish a *prima facie* case, but she also fails to demonstrate that the legitimate, non-discriminatory reasons offered by Defendants were a pretext for discrimination.

### 1. Plaintiff Cannot Establish a *Prima Facie* Case

■ "To establish a prima facie case of a discriminatory failure to promote, a Title VII plaintiff must ordinarily demonstrate that: (1) she is a member of a

protected class; (2) she applied and was qualified for a job for which the employer was seeking applicants; (3) she was rejected for the position; and (4) the position remained open and the employer continued to seek applicants having the plaintiff's qualifications." *Petrosino v. Bell Atl.*, 385 F.3d 210, 226 (2d Cir.2004) (internal quotations and citations omitted). Therefore, in order to be successful on a failure to promote claim, a plaintiff must show that she "applied for an available position for which she was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination." *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 710 (2d Cir.1998) (quotation omitted). Furthermore, a plaintiff must have applied specifically for the position in question. *Id.* at 710. "An allegation that a general request for promotion was made is insufficient for purposes of a failure to promote claim." *Romaine v. N.Y.C. Coll. of Tech.*, No. 10–CV–431 (SLT)(SMG), 2012 WL 1980371, at *3, 2012 U.S. Dist. LEXIS 76523, at *11 (E.D.N.Y. June 1, 2012).

Here, Plaintiff cannot establish a *prima facie* case because she did not specifically apply for any of the positions that she claims she was denied. The record shows that there are five positions for which Plaintiff claims she was a denied a promotion:

(1) Tank Supervisor (Dkt. 186–8 at ¶ 17);

(2) Process Engineering Supervisor/Manager (*Id.* at ¶ 18, Dkt. 186–9 at ¶ 19);

(3) Manufacturing Leader (Dkt. 186–8 at ¶ 19);

(4) Process Engineering Supervisor (*Id.* at ¶ 20); and,

(5) Innovation Leader (*Id.* at ¶ 21, Dkt. 186–9 at ¶ 20).

(*See also* Dkt. 186–10 at 8:6–17, 20:9–15, 33:3–4, 34:8–18, 45:9–14).[3] Plaintiff also generally contends that other jobs for which she attempted to apply were cancelled. (Dkt. 208–3 at ¶¶ 19–20).

As noted previously, any failure to promote claim based on the Tank Supervisor and Process Engineering Supervisor/Manager position is time barred. Moreover, the record demonstrates that Plaintiff did not actually apply for any of the positions. Plaintiff testified at her deposition that she did not apply for the Tank Supervisor position, the Process Engineering Supervisor/Manager position, the Manufacturing Leader position, the Process Engineering Supervisor position, or the Innovation Leader position, but only that she expressed interest in or informally interviewed for these positions. (*See* Dkt. 186–10 at 10:4–9, 20:6–15, 22:5–6, 23:11–15, 33:15–20, 37:3–8, 14–17, 39:16–24, 43:6–7). Because Plaintiff failed to apply for these positions, she cannot establish a *prima facie* case. *See Brown*, 163 F.3d at 709 ("[Plaintiff's] failure to apply and be rejected for a specific position or positions is fatal to her failure to promote . . . [claim].").

■ Of course, a plaintiff's failure to apply for a position "is not a bar to relief when an employer's discriminatory practices deter application or make application a futile endeavor." *Malarkey v. Texaco*,

---

3. At her deposition, Plaintiff was confused regarding the difference between the "Process Engineering Supervisor" position and the "Process Engineering Supervisor/Manager" position. (Dkt. 186–10 at 37–38). Although the titles of the positions are similar, Plaintiff testified that both of these positions were D–Band engineering positions and were filled by Max Bliss and Jelena Langensipen, respectively. (*Id.* at 39–40). Plaintiff could not recall whether the position filled by Ms. Langensipen was titled "Process Engineering Supervisor" or "Process Engineering Manager," and therefore referred to that position as the "Process Engineering Supervisor/Manager" position. (*Id.* at 40:15–22).

*Inc.,* 983 F.2d 1204, 1213 (2d Cir.1993). Although Plaintiff does not raise this argument in her papers, she does state that she was deterred from applying for certain positions due to Defendants' alleged discrimination. (*See* Dkt. 186–10 at 19:11–13). For example, at her deposition, Plaintiff testified that "[she] was not given the opportunity to apply for specific jobs [she] was interested in." (*Id.*).

■ On the other hand, "a plaintiff cannot avoid this requirement [of specifically applying for the position] by generally requesting to be considered for the position or by alleging an 'aura of discrimination' that 'somehow discouraged [her] from filing a formal application.' " *Sethi v. Narod,* 12 F.Supp.3d 505, 526 n. 6 (E.D.N.Y.2014) (quoting *Petrosino,* 385 F.3d at 227); *see also Moore v. Metro Transp. Auth.,* 999 F.Supp.2d 482, 496 (S.D.N.Y.2013) (stating that the exception to the application requirement "is narrow and does not pertain simply because an employee asserts that an aura of discrimination in the workplace somehow discouraged her from filing a formal application.") (internal quotations and citations omitted).

■ Here, Plaintiff's assertion that she was deterred from applying for certain positions due to gender discrimination is conclusory and unsupported by any evidence in the record. *See Brown v. City of New York,* No. 14 Civ. 2668(PAE), 2014 WL 5394962, at *6, 2014 U.S. Dist. LEXIS 150577, at *19–20 (S.D.N.Y. Oct. 23, 2014) (a plaintiff cannot establish *a prima facie* case of discrimination based on " 'purely conclusory allegations of discrimination, absent any concrete particulars.' ") (quoting *Tanvir v. N.Y.C. Health & Hosps. Corp.,* 480 Fed.Appx. 620, 622 (2d Cir. 2012)). Plaintiff's conclusory and general assertions that she was deterred from applying for certain positions are not enough to qualify her for this "narrow" exception, *Moore,* 999 F.Supp.2d at 496, and she

therefore is unable to establish a *prima facie* case.

### 2. Defendants Offer Legitimate, Non-Discriminatory Reasons for Failing to Promote Plaintiff

■ Even if Plaintiff was able to establish a *prima facie* case, Defendants have satisfied their burden to articulate a legitimate, non-discriminatory reason for their failure to promote Plaintiff. Defendants offer evidence that Plaintiff was not qualified for the positions and there were better candidates for these positions.

"The employer's explanation of its reasons [for not promoting] must be clear and specific." *Meiri v. Dacon,* 759 F.2d 989, 997 (2d Cir.1985). Defendants have provided a clear and specific explanation as to why Plaintiff, even if she had applied for the positions, was not the best qualified. For example, Terry informed Plaintiff that Coming had objective criteria for an employee to be promoted from one band to another, and that Plaintiff had not yet satisfied the criteria to be promoted to a D-band position (Dkt. 186–8 at ¶¶ 10–16; *see also* Dkt. 186–9 Ex. A); that Plaintiff was not promoted to the Manufacturing Leader position, a D-band position, because she had not satisfied the D-band criteria and because Corning filled the position with a more qualified engineer (Dkt. 186–8 at ¶ 19; Dkt. 209–2 at ¶¶ 12–13); and that Plaintiff was not promoted to the Process Engineering Supervisor position, also a D-band position, because Coming had already identified a better-qualified and more experienced candidate for the position (Dkt. 186–8 at ¶ 20).

Corning was entitled to deny Plaintiff a promotion to a D-band position because she had not yet met the qualifications for such a promotion. The stated explanation constitutes a legitimate, non-discriminatory reason for failing to promote Plaintiff.

*See Wharff v. State Univ. of N.Y.*, 413 Fed.Appx. 406, 408 (2d Cir.2011) ("Where a decision . . . to promote . . . one person rather than another is reasonably attributable to an honest even though partially subjective evaluation of qualifications, no inference of discrimination can be drawn."); *Hines v. Hillside Children's Ctr.*, 73 F.Supp.2d 308, 320 (W.D.N.Y.1999) ("an employee's opinion about h[er] own qualifications does not suffice to give rise to an issue of fact about whether [s]he was discriminated against, and [t]hat is particularly true when the employer's decision whether to promote plaintiff did not depend on whether [s]he was qualified, but whether [s]he was the best candidate for the job.") (quotation omitted); *Sandman v. Mediamark Research, Inc.*, No. 00 Civ. 6529(JSM), 2002 WL 424660, at *5, 2002 U.S. Dist. LEXIS 4495, at *12 (S.D.N.Y. Mar. 18, 2002) ("Defendant's reasons for not promoting Plaintiff are that she lacked experience, failed to meet Defendant's standards of professionalism, and was not more qualified than [the promoted employee]. While Defendants' reasons may not be enough to prove that Plaintiff was simply not qualified for the job, they are nevertheless legitimate, nondiscriminatory reasons for not promoting Plaintiff").

### 3. Plaintiff Cannot Show Pretext

██ Because Defendants have offered a legitimate, non-discriminatory explanation for failing to promote Plaintiff, the burden shifts back to Plaintiff, and she must "demonstrate by competent evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Leibowitz*, 584 F.3d at 498–99 (quotation omitted). "[I]f the plaintiff has failed to show that there is evidence that would permit a rational factfinder to infer that the employer's proffered rationale is pretext, summary judgment dismissing the claim is appropriate." *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 221 (2d Cir.2004) (citation omitted).

Plaintiff's conclusory assertions that she was discriminated against based on her gender, and that Defendants' statements regarding their failure to promote her are untrue, are insufficient to establish pretext. Put simply, Plaintiff offers no evidence-based facts to support a claim of pretext. *See Smith v. Am. Express Co.*, 853 F.2d 151, 155 (2d Cir.1988) (affirming grant of summary judgment for employer because plaintiff's affidavit and memorandum "reveal nothing that would convince a factfinder that the reasons given by [the employer] for promoting [another employee] rather than [plaintiff] were a pretext for discrimination. Rather his allegations are conclusory and unsupported by evidence of any weight; they are insufficient to satisfy the requirements under Rule 56(e)."); *Hussey v. N.Y. State Dep't of Law*, 933 F.Supp.2d 399, 407 (E.D.N.Y. 2013) (although plaintiff insisted that defendants' reason for their refusal to promote her was a pretext for racial discrimination, she offered no facts in support of that claim, "and therefore fail[ed] to allege sufficiently that the failure to promote her . . . was based on her race."); *Watson v. Geithner*, No. 09 Civ. 6624(HBP), 10 Civ. 3948(HBP), 10 Civ. 7282(HBP), 2013 WL 5420932, at *11, 2013 U.S. Dist. LEXIS 139673, at *32 (S.D.N.Y. Sept. 27, 2013) (granting summary judgment in favor of defendants and noting that where defendants did not "merely articulate" but "substantially established" legitimate, nondiscriminatory reasons, plaintiffs task of proving pretext was "more difficult," and that plaintiff's opposition brief was a "restatement of her complaints," and consisted of "conclusory statements that lack evidentiary support.") (quotation omitted); *Mixon v. Buffalo Med. Grp., P.C.*, No. 10–CV–1043, 2013 WL 597594, at *6–7, 2013 U.S. Dist. LEXIS 21889, at *17–18

(W.D.N.Y. Jan. 28, 2013), *adopted,* No. 10–CV–1043A, 2013 WL 593985, 2013 U.S. Dist. LEXIS 21196 (W.D.N.Y. Feb. 15, 2013) ("[A]n employee's unsupported subjective belief that she was being discriminated against is insufficient to establish that the employer's articulated legitimate reason for its employment action is a pretext for illegal discrimination.") (citing *Bickerstaff v. Vassar Coll.,* 196 F.3d 435, 456 (2d Cir.1999)).

The Court notes that Plaintiff includes in her confidential appendix of exhibits affidavits of three former employees of Corning. Plaintiff submits these affidavits in support of her argument that Corning discriminates against women. However, these affidavits do not aid Plaintiff in her argument because, as noted by Defendants, all of these women were terminated for reasons other than their gender, including chronic absenteeism and Coming's 2009 "Reduction in Force." (*See* Dkt. 209–3 at 3–4). More importantly, these affidavits are unrelated to Plaintiff's case, and the affiants offer no personal knowledge of the claims made in Plaintiff's amended complaint. *See Zito v. Fried, Frank, Harris, Shriver & Jacobson, LLP,* 869 F.Supp.2d 378, 389 (S.D.N.Y.2012) ("Affidavits from former employees alleging that they were discharged because of their [gender] [are] insufficient to demonstrate pretext because an employee's subjective beliefs or personal disappointments do not meet the objective indicia of an adverse employment action.") (internal quotations and citation omitted); *Giruzzi v. Blue Cross/Blue Shield of Utica–Watertown, Inc.,* No. 97–CV–0078, 1998 WL 690981, at *8, 1998 U.S. Dist. LEXIS 15589, at *22–23 (N.D.N.Y. Sept. 30, 1998) (declining to consider affidavits of two other employees offered by plaintiff to show pretext).

"It is not this Court's role to second-guess [an employer's] evaluation of [an employee.]" *Pawlowski v. Unified Court Sys.,* No. 12–CV–208S, 2014 WL 2453110, at *5, 2014 U.S. Dist. LEXIS 75547, at *15 (W.D.N.Y. June 2, 2014). "[T]he court must respect the employer's unfettered discretion to choose among qualified candidates," and "[a]n employer is entitled to arrive at a subjective evaluation of a candidate's suitability for a position." *Byrnie v. Town of Cromwell Bd. of Educ.,* 243 F.3d 93, 106 (2d Cir.2001) (quotation omitted). As explained above, Plaintiff has failed to offer evidence other than her own subjective belief that Defendants' alleged reasons justifying the failure to promote Plaintiff were, in reality, a pretext for discrimination. Because there is no disputed issue of material fact regarding Plaintiff's failure to promote claims, Defendants are entitled to summary judgment on these claims.

## B. Plaintiffs Hostile Work Environment Claims

Plaintiff's amended complaint may also be construed to assert a hostile work environment claim in violation of Title VII and the New York State Executive Law. (Dkt. 50 at ¶¶ 68–74, 99, 119–126). As an initial matter, the Court notes that the September 16, 2010 Decision and Order dismissed Plaintiff's claims based on a hostile work environment for failure to state a claim. (*See* Dkt. 162 at 7). In other words, Plaintiff's hostile work environment claims have already been dismissed. Nevertheless, Defendants raise and address Plaintiff's hostile work environment claims in their memorandum of law. (*See* Dkt. 186–1 at 9). Accordingly, the Court addresses Plaintiff's hostile work environment claim, and finds that even if the claims had not already been dismissed, it is apparent that summary judgment should be granted in favor of Defendants.

Defendants argue that Plaintiff's hostile work environment claims must be dismissed because the alleged conduct was

not sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment. (*Id.*). Because "hostile work environment claims under the NYSHRL 'are analyzed under the same standard as Title VII hostile work environment claims,'" the Court will address these claims together. *Edwards v. Jericho Union Free Sch. Dist.*, No. 11–CV–3261(DRH)(SIL), 55 F.Supp.3d 458, 466, 2014 WL 5463625, at *7, 2014 U.S. Dist. LEXIS 153316, at *17 (E.D.N.Y. Oct. 29, 2014) (citing *Russo v. N.Y. Presbyterian Hosp.*, 972 F.Supp.2d 429, 449 (E.D.N.Y. 2013)).

■■■■ Unlike failure to promote claims, hostile work environment claims are not analyzed using the *McDonnell Douglas* three-part burden-shifting test. *Grant v. United Cerebral Palsy of N.Y.C., Inc.*, No. 11 Civ. 00018(LGS), 2014 WL 902638, at *8, 2014 U.S. Dist. LEXIS 30029, at *21 (S.D.N.Y. Mar. 7, 2014). In order to succeed on a claim for a hostile work environment, a plaintiff must prove " '(1) that her workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of her work environment; and (2) that a specific basis exists for imputing the conduct that created the hostile work environment to the employer.'" *Chenette v. Kenneth Cole Prods.*, 345 Fed.Appx. 615, 619–20 (2d Cir.2009) (quoting *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 715 (2d Cir.1996)). "This test has objective and subjective elements: the misconduct shown must be 'severe or pervasive enough to create an objectively hostile or abusive work environment,' and the victim must also subjectively perceive that environment to be abusive." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir.2002) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). "A work environment will be considered hostile if a reasonable person would have found it to be so and if the plaintiff subjectively so perceived it. A plaintiff must also demonstrate that she was subjected to the hostility because of her membership in a protected class." *Brennan v. Metro. Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir.1999).

■■■■ "Isolated incidents typically do not rise to the level of a hostile work environment unless they are 'of sufficient severity' to 'alter the terms and conditions of employment as to create such an environment.'" *Demoret*, 451 F.3d at 149 (quoting *Patterson*, 375 F.3d at 227). When evaluating a hostile work environment claim, the Court must not "view individual incidents in isolation," or "view the record in piecemeal fashion," but should consider "the totality of the circumstances, viewed from the perspective ... of a reasonable person in the plaintiff's position, considering all the circumstances [including] the social context in which particular behavior occurs and is experienced by its target." *Redd v. N.Y. Div. of Parole*, 678 F.3d 166, 176 (2d Cir.2012) (internal quotations and citations omitted) (alteration in original).

■■■■ Plaintiff does not identify specifically the alleged actions that purportedly created a hostile work environment. Based on the allegations contained in her amended complaint (Dkt. 50), the statements in her affidavit (Dkt. 208–3), and her deposition testimony (Dkt. 186–10), the Court construes Plaintiff's claim as based on the comment that "people" were referring to her as the "cleaning bitch" (Dkt. 208–3 at ¶ 45); that Cites was "rude" to her in team meetings (*id.* at ¶ 52); that Cites tried to portray her as a drug-user (Dkt. 210 at 22, ¶ 3); that a rumor had been started that Plaintiff had a "crush" on Cites (Dkt. 208–3 at ¶ 28); that Moore harassed Plaintiff by sending her emails and by saying "hi" to her three times when she was standing in a hallway (Dkt. 186–10

at 18:4–23); and that other employees "sabotaged" Plaintiff's work on the SiOG project (Dkt. 203–8 at ¶ 30).

Plaintiff has failed to describe severe or pervasive conduct. Instead, Plaintiff relies upon isolated and sporadic comments that are neither severe enough nor pervasive enough to rise to the level of a hostile work environment. *See Redd*, 678 F.3d at 175–76 (2d Cir.2012) ("Isolated incidents usually will not suffice to establish a hostile work environment [unless] . . . the incident is sufficiently 'severe.' "); *Thomas v. iStar Fin., Inc.*, 652 F.3d 141, 151 (2d Cir.2011) (occasional and isolated events do not rise to the level of hostile work environment); *Spina v. Our Lady of Mercy Med. Ctr.*, No. 97 Civ. 4661(RCC), 2003 WL 22434143, at *3–4, 2003 U.S. Dist. LEXIS 19091, at *10–11 (S.D.N.Y. Oct. 23, 2003), *aff'd*, 120 Fed.Appx. 408 (2d Cir. 2005) (no pervasive conduct rising to level of hostile work environment where plaintiff's supervisor called her a "bitch," complimented her hair and eyes, and told her that she "looked good in tight pants.").

 In addition, the sole comment that could be construed as discriminatory on its face is that Plaintiff was referred to as the "cleaning bitch." Standing alone, this incident does not rise to the level of a hostile work environment claim.[4] *See Sardina v. United Parcel Serv., Inc.*, 254 Fed.Appx. 108, 110 (2d Cir.2007) ("[A] few off-color comments including references to 'office bitches' " do not make a hostile work environment). Plaintiff attempts to buttress her hostile work environment claims by relying upon various incidents that Plaintiff contends were directed at her because

of her gender, but which on their face are gender-neutral. While actions that are neutral on their face can be considered in assessing the totality of the circumstances for a hostile work environment claim, there must be " 'some circumstantial or other basis for inferring that [such] incidents . . . were in fact discriminatory.' " *Lioi v. N.Y.C. Dep't of Health and Mental Hygiene*, 914 F.Supp.2d 567, 591 (S.D.N.Y. 2012) (quoting *Alfano*, 294 F.3d at 378).

Here, Plaintiff does not allege "any fact to connect [any gender-based comment] . . . to her other allegations of unfair treatment, which are not facially related to her [gender]." *Fleming v. MaxMara U.S.A., Inc.*, 371 Fed.Appx. 115, 119 (2d Cir.2010) (dismissing hostile work environment claim where there was only one racially harassing comment unconnected to numerous incidents of alleged unfair treatment that were relatively minor in nature, ranging from exclusion from meetings to excessive criticism of work); *see also Raum v. Laidlaw Ltd.*, 173 F.3d 845, 1999 WL 248157, at *2, 1999 U.S.App. LEXIS 8219, at *5 (2d Cir.1999) (while remarks may have been "crass and offensive" they were not predicated on plaintiff's protected classification and therefore were not actionable); *Douglass v. Rochester City Sch. Dist.*, 873 F.Supp.2d 507, 508–09 (W.D.N.Y.2012), *aff'd*, 522 Fed.Appx. 5 (2d Cir.2013) (granting summary judgment on hostile work environment claim in favor of defendant where plaintiff alleged that principal had communicated with her in a disrespectful tone, admonished her in front of others, referred to her during a meeting as "that

---

4. Plaintiff does allege in her amended complaint other comments that could be considered to be gender-discriminatory on their face. (*See* Dkt. 50 at ¶¶ 22, 32–34, 43, 52, 54, 64–67). However, these allegations are contained within paragraphs 18–67 of the amended complaint, which were dismissed by the September 16, 2010 Decision and Order.

(*See* Dkt. 162 at 7 ("[D]efendants' motion to dismiss the claims asserted in paragraphs 18–67 of the Amended Complaint . . . is granted . . . .")). Furthermore, Plaintiff offers no evidence that Defendants actually made these discriminatory comments to her. Accordingly, the Court does not consider them.

lady," and left her out of some lunch meetings, among other things, because plaintiff's allegations did not include any facts indicating that any of the conduct occurred because of her gender); *Parekh v. Swissport Cargo Serv., Inc.*, No. CV–08–1994 (CPS), 2009 WL 290465, at *5, 2009 U.S. Dist. LEXIS 8543, at *15 (E.D.N.Y. Feb. 5, 2009) (plaintiff's complaints concerning "unfair disciplinary actions, shift changes, reduction in manpower, wrongfully withheld vacation time, failure to provide him with proper equipment, workplace transfers, failure to promote, and his termination contain no suggestion of hostility or offensiveness.").

Put simply, Plaintiff's allegations do not, as a matter of law, depict a workplace "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment . . . ." *Harris*, 510 U.S. at 21, 114 S.Ct. 367 (citations and quotations omitted). Plaintiff's "laundry list of inconveniences, disagreements, and arguments, none of which are of the type of severity or persistence necessary to sustain a hostile work environment claim" are insufficient to defeat Defendants' motion for summary judgment. *Mento v. Potter*, 95 Empl. Prac. Dec. (CCH) P44,512, 2012 WL 1908920, at *14, 2012 U.S. Dist. LEXIS 73319, at *44–45 (W.D.N.Y. May 25, 2012).

### III. Plaintiff's Retaliation Claims

Plaintiff's third and fourth causes of action are for retaliation, in violation of Title VII and the New York State Executive Law. (Dkt. 50 at ¶¶ 127–32). According to her amended complaint, Plaintiff maintains that she suffered retaliation in the form of denial of promotions and a hostile work environment. (*Id.* at ¶¶ 128, 131). Additionally, Plaintiff's claims may be construed to state that she suffered retaliation in the form of a transfer to the OLED

division. (*See* Dkt. 208–1 at ¶ 28 (stating that she did not receive an equivalent role on the OLED project and was hired in a non-leadership role)). Defendants argue that they are entitled to summary judgment on Plaintiff's retaliation claims because Plaintiff has not suffered an adverse employment action. (Dkt. 186–1 at 24–25; Dkt. 209 at 11–12).

Title VII makes it unlawful to retaliate against an employee " 'because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or *participated in any manner* in an investigation, proceeding, or hearing under this subchapter.' " *Deravin v. Kerik*, 335 F.3d 195, 203 (2d Cir.2003) (quoting 42 U.S.C. § 2000e–3(a)). Similar to other gender discrimination claims, retaliation claims are analyzed under the three-step burden-shifting analysis set forth in *McDonnell Douglas Corp.*, 411 U.S. at 802–05, 93 S.Ct. 1817. This analysis provides that "[o]nce the employee has established a *prima facie* case, the employer 'must proffer a legitimate, non-discriminatory reason for the adverse action. If it does so, then the burden shifts back to the [employee] to demonstrate pretext.' " *Verga v. Emergency Ambulance Serv.*, No. 12–CV–1199 (DRH)(ARL), 2014 WL 6473515, at *3, 2014 U.S. Dist. LEXIS 161512, at *9 (E.D.N.Y. Nov. 18, 2014) (citing *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 94–95 (2d Cir.2001)).

"To establish a prima facie case for retaliation under Title VII, the plaintiff must show that: (1) he participated in a protected activity; (2) his employer was aware of this activity; (3) he suffered an adverse employment action; and (4) his protected activity was the but-for cause of the alleged adverse employment action." *Henvill v. Metro. Transp. Auth.*, No. 13 Civ. 7501(GBD), 2014 WL 5375115, at *3, 2014 U.S. Dist. LEXIS 149066, at *10

(S.D.N.Y. Oct. 10, 2014) (citing *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 24 (2d Cir.2012)).

 With regard to causation, the Supreme Court of the United States recently clarified that "[a] plaintiff making a retaliation claim under § 2000e–3(a) must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer," as distinct from "a motivating factor," which had previously been the standard in the Second Circuit. *See Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, —— U.S. ——, 133 S.Ct. 2517, 2534, 186 L.Ed.2d 503(2013).

 Generally, the same analysis applies to retaliation claims made under the NYSHRL and Title VII. *See Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir.2010). "Although New York State Courts have yet to address the impact of the Supreme Court's recent holding in *Nassar* on the NYSHRL, nor has the Second Circuit provided ... guidance as to this issue, this Court will continue to construe the NYSHRL as requiring the same elements as Title VII." *Verga*, 2014 WL 6473515, at *3 n. 4, 2014 U.S. Dist. LEXIS 161512, at *9–10 n. 4 (internal quotations and citation omitted).

**A. Adverse Employment Action**

There is no question that Plaintiff's internal complaints at Corning and her filing complaints with the NYSDHR and EEOC qualify as protected activities of which her employer was plainly aware. *See Thomas*

*v. iStar Fin., Inc.*, 438 F.Supp.2d 348, 364 (S.D.N.Y.2006) ("Informal complaints to supervisors" are protected activity under Title VII); *Milne v. Navigant Consulting, Inc.*, No. 08 Civ. 8964(PAE), 2012 WL 3283454, at *5, 2012 U.S. Dist. LEXIS 114005, at *14 (S.D.N.Y. Aug. 13, 2012) ("Filing an EEOC charge is a protected activity under Title VII."). However, Plaintiff's retaliation claims fail because she cannot establish an adverse employment action.

 "To constitute an adverse employment action for purposes of a retaliation claim, the action must be 'materially adverse' such that it could 'dissuade a reasonable worker from making or supporting a charge of discrimination.' " *Giordano–Forkan v. N.Y.C. Dep't of Educ.*, No. 13 Civ. 06950(GBD), 2014 WL 5369426, at *2, 2014 U.S. Dist. LEXIS 153977, at *6–7 (S.D.N.Y. Oct. 17, 2014) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006)).[5] "Alleged acts of retaliation must be evaluated both separately and in the aggregate, as even trivial acts may take on greater significance when they are viewed as part of a larger course of conduct." *Tepperwien v. Entergy Nuclear Operations*, 663 F.3d 556, 569 (2d Cir. 2011).

Plaintiff contends that she was retaliated against after filing a November 2006, human resources complaint for gender-based discrimination. (Dkt. 50 at ¶¶ 75, 128, 131; Dkt. 208–3 at ¶¶ 8–9).[6] As noted

---

**5.** Defendants argue that Plaintiff's retaliation claims fail because she is unable to establish an adverse employment action, as there was no materially adverse change in the terms and conditions of her employment. (*See* Dkt. 186–1 at 24–25; Dkt. 209 at 13–14). Defendants' reliance on the former "terms and conditions of employment" standard is misplaced, as it no longer represents the state of the law in the Second Circuit for purposes of evaluating a retaliation claim. Rather, as ex-

plained above, a plaintiff must show that the action would dissuade a reasonable worker from making or supporting a charge of discrimination.

**6.** In her complaint, Plaintiff alleges that she was also retaliated against following her filing of a charge with the EEOC, in the form of denial of promotions and defamation. (*See* Dkt. 50 at ¶¶ 96–101). However, during her deposition, Plaintiff testified that she was re-

above, Plaintiff has claimed retaliation in three forms, i.e., failure to promote, hostile work environment, and transfer to the OLED project. Accordingly, the Court examines each of the alleged adverse actions to determine if Plaintiff has established a *prima facie* case of retaliation.

### 1. Failure to Promote

Plaintiff asserts that Defendants denied her promotions in retaliation for her filing an internal complaint of gender discrimination. (Dkt. 50 at ¶¶ 99–101, 128, 131). Failing to promote an employee may qualify as a retaliatory adverse employment action. *See Lovejoy–Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 223 (2d Cir. 2001) (stating in context of a Title VII retaliation claim that adverse actions include "discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand.") (internal quotations and citation omitted).

However, as discussed above in the discrimination context, Plaintiff fails to identify positions for which she applied but was denied in retaliation for her filing the internal complaint. Instead, Plaintiff makes only general and conclusory allegations that she was not promoted in retaliation for filing an internal complaint. (*See* Dkt. 50 at ¶ 98 ("On one or more occasions, it was made apparent to Plaintiff that her future with the company is impaired by the fact that she filed a charge of discrimination."); *id.* at ¶ 99 ("Plaintiff has been denied promotions and other employment opportunities due to gender and retaliation."); *id.* at ¶ 100 (Matthews has been denied leadership opportunities on the OLED project and other, subsequent projects); Dkt. 208–1 at ¶ 17 ("I have been banned for over 5 years from projects and roles that would have evolved my skills further towards any relevant criteria for a

promotion on the technical track ...."); *id.* at ¶ 36 (Plaintiff has had "no opportunity to utilize any leadership skills"); Dkt. 208–3 at ¶ 9 (Plaintiff "believe[s] wholeheartedly" that she has been retaliated against for filing a gender-based complaint, which has "manifested by lack of any in-band promotions ....")).

Plaintiff's general assertions are not sufficient for establishing an adverse employment action based on the failure to promote. *See Zane v. City of New York*, No. 11–CV–4961 (FB)(RER), 2014 WL 972032, at *7, 2014 U.S. Dist. LEXIS 33753, at *20–21 (E.D.N.Y. Mar. 13, 2014) (dismissing plaintiff's retaliation claim based on a failure to promote where he provided "no evidence, aside from conclusory statements that he was denied the promotion because of ongoing retaliation ...."); *Holder v. City of Yonkers*, No. 04 Civ. 10314(LMS), 2006 WL 1582081, at *7, 2006 U.S. Dist. LEXIS 37602, at *22 (S.D.N.Y. June 7, 2006) (denying Plaintiff's retaliation claim where "[t]he only factual support the Plaintiff provides for his claim of retaliation is his own assertions .... Plaintiff has neither been demoted ..., nor transferred to a less desirable position of employment within the Yonkers Public School system."). As with her discrimination claims, Plaintiff's retaliation claims based upon a failure to promote must fail.

### 2. Hostile Work Environment

Plaintiff claims that she was retaliated against by being subjected to a hostile work environment. While a standalone hostile work environment claim requires a workplace that is "permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive work-

taliated against after she made an internal complaint at Corning in November 2006, not

after she filed her EEOC complaint. (*See* Dkt. 186–10 at 26:7–23).

ing environment ....' " *Harris,* 510 U.S. at 21, 114 S.Ct. 367 (internal citations omitted), "anti-retaliation protection is broader," and the meaning of an adverse employment action in the context of retaliation are those that are "harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Hicks,* 593 F.3d at 165 (internal quotation and citation omitted); *see also Santiesteban v. Nestle Waters N. Am., Inc.,* 11 CV 6296(DRH)(ARL), 61 F.Supp.3d 221, 241, 2014 WL 5305998, at *14, 2014 U.S. Dist. LEXIS 147101, at *37 (E.D.N.Y. Oct. 15, 2014) ("What qualifies as an adverse employment action in the context of a claim of retaliation is much broader than in the context of a claim of discrimination.").[7]

█ Plaintiff does not identify specifically which actions taken by Defendants created a hostile work environment. (*See* Dkt. 50, Dkt. 203–8). As it did in the context of her stand-alone hostile work environment claim, the Court construes Plaintiff's claim as based on the comment that "people" were referring to her as the "cleaning bitch" (Dkt. 208–3 at ¶ 45); that

Cites was "rude" to her in team meetings (*id.* at ¶ 52); that a rumor had been started that Plaintiff had a "crush" on Cites (*id.* at ¶ 28); that Cites tried to portray her as a drug-user (Dkt. 210 at 22, ¶ 3); that Moore harassed Plaintiff by sending her emails and by saying "hi" to her three times when she was standing in a hallway (Dkt. 186–10 at 18:4–23); and that other employees "sabotaged" Plaintiff's work on the SiOG project (Dkt. 203–8 at ¶ 30). Plaintiff also claims that she was deprived of access to her files on the SiOG project after she left the project. (*Id.* at ¶ 41).

Plaintiff's claims of a retaliatory hostile work environment are general and unsupported, and "a party cannot create a triable issue of fact merely by stating in an affidavit the very proposition they are trying to prove." *Hicks,* 593 F.3d at 167 (granting defendant summary judgment on Plaintiff's general claims of workplace sabotage by allegedly compromising the security of a work facility so that it would reflect poorly on the plaintiff). Furthermore, it is well-settled that the actions described by Plaintiff do not rise to the level of an adverse employment action, even in the retaliation context. *See Bur-*

---

**7.** Some courts have questioned whether the Supreme Court's decision in *Burlington N. & Santa Fe Ry. v. White,* 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006), which broadened the standard for a material adverse action in the retaliation context, also altered the standard for retaliatory hostile work environment claims, such that they should no longer be treated the same as discriminatory hostile work environment claims. *See Hahn v. Bank of Am. Inc.,* No. 12 Civ. 4151(DF), 2014 WL 1285421, at *22, 2014 U.S. Dist. LEXIS 45886, at *67–69 (S.D.N.Y. Mar. 31, 2014). In other words, "the question was raised whether plaintiffs attempting to show a retaliatory hostile work environment could potentially survive summary judgment by showing that they were subjected to conduct, which although objectionable enough that it might have dissuaded a reasonable worker from making or supporting a charge of discrimina-

tion, did not meet the severe or pervasive threshold ordinarily required in hostile work environment claims" *Id.* at *22 n. 14, 2014 U.S. Dist. LEXIS 45886 at *68 n. 14 (internal quotations and citation omitted). In fact, notwithstanding the decision in *Burlington,* "[n]early every decision to address a claim for a retaliatory hostile work environment has held that a plaintiff must satisfy the same standard used to evaluate conventional hostile work environment claims ...." *Cajamarca v. Regal Entm't Grp.,* 863 F.Supp.2d 237, 253–55 (E.D.N.Y.2012). Regardless of this, and having already determined that Plaintiff's hostile work environment allegations do not reach the "severe or pervasive" standard, the Court will evaluate Plaintiff's retaliatory hostile work environment claim under the more relaxed standard for retaliation claims. *See Hahn,* 2014 WL 1285421, at *22 n. 14, 2014 U.S. Dist. LEXIS 45886, at *69 n. 14.

lington N. & Santa Fe Ry. v. White, 548 U.S. 53, 68, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006) ("[P]ersonality conflicts at work that generate antipathy and snubbing by supervisors and co-workers are not actionable ....") (quotation omitted); *Tepperwien*, 663 F.3d at 571 (finding that comment by supervisor about people he did not like, followed by pointed stare at plaintiff, was not a material adverse action); *Santiesteban*, 61 F.Supp.3d at 242, 2014 WL 5305998, at *15, 2014 U.S. Dist. LEXIS 147101, at *39 (Plaintiff's claim that after he made a complaint, his manager "ignored him completely" did not rise to the level of an adverse employment action); *Hahn*, 2014 WL 1285421, at *23–24, 2014 U.S. Dist. LEXIS 45886, at *73–74 (plaintiff's allegations that on a few occasions, supervisory employee yelled at her and embarrassed her in front of her co-workers, did not rise to level of adverse employment action under the general retaliation standard requiring conduct sufficient to dissuade a reasonable worker from making a charge of discrimination); *Rivera v. Orange Cnty.*, No. 10 CV 9134(VB), 2013 WL 812016, at *9, 2013 U.S. Dist. LEXIS 30847, at *25–26 (S.D.N.Y. Mar. 5, 2013) (stating that defendants' alleged acts of "excluding [plaintiff] from meetings ... and generally making him feel isolated at work ... [do] not qualify as an adverse employment action," but rather were among " 'those petty slights or minor annoyances that often take place at work and that all employees experience.' ") (quoting *Burlington N. & Santa Fe Ry.*, 548 U.S. at 68, 126 S.Ct. 2405).

Indeed, Plaintiff's own conduct demonstrates that any reaction by Defendants to her complaints of discrimination did not dissuade her from continuing to make complaints. *See Hahn*, 2014 WL 1285421, at *24, 2014 U.S. Dist. LEXIS 45886, at *75 ("the Court notes that Plaintiff herself was not dissuaded from making additional complaints ... after suffering the alleged harassment."). For example, Plaintiff admits that she filed a charge of discrimination with the EEOC, even after she allegedly experienced a hostile work environment in retaliation for her November 2006 complaint to Corning. (*See* Dkt. 50 at ¶ 95 ("In April, 2007 Matthews filed a charged of discrimination with the EEOC.")). This negates any claim that the alleged harassment directed toward Plaintiff constituted an adverse action for purposes of establishing a retaliation claim. By Plaintiff's own implied admission, the alleged harassment did not dissuade her from continuing to complain about alleged discrimination.

### 3. Transfer to OLED

Plaintiff's submissions may be construed to assert that her transfer to OLED was retaliatory in nature. However, it is undisputed that Plaintiff requested her transfer from the SiOG project to the OLED project, and Plaintiff contends that the transfer was positive, as the OLED team was diverse and the project manager fostered an inclusive environment for women and minorities. (Dkt. 208–3 at ¶¶ 30–31, 55; Dkt. 209–2 at ¶ 27). The record demonstrates that Plaintiff's transfer from the SiOG project to the OLED project was lateral and not a demotion, as Plaintiff's corporate title, pay grade, and benefits remained the same. (Dkt. 186–9 at ¶ 14). Plaintiff was provided with an executive coach to support her in her new assignment in the OLED group (*id.* at ¶ 15), and in 2011, she received a raise commensurate with her peers in the MT & E Division (*id.* at ¶ 22).

Plaintiff has not submitted any evidence, other than her own subjective belief, that her transfer to the OLED project was an adverse employment action, as she is required to do to prove her claim. *See Krachenfels v. N. Shore Long Island Jewish Health Sys. and Univ. Hosp.*, No. 13–CV–

243 (JFB)(WDW), 2014 WL 3867560, at *17, 2014 U.S. Dist. LEXIS 103474, at *64 (E.D.N.Y. July 29, 2014) ("Although the definition of an adverse employment action standard is relaxed for a retaliation claim ... a plaintiff asserting retaliation in the form of a denied transfer is not completely relieved of showing some facts enabling the factfinder to compare the plaintiff's actual position to her desired position."); *Taylor v. N.Y.C. Dep't of Educ.*, No. 11–CV–3582, 2012 WL 5989874, at *10, 2012 U.S. Dist. LEXIS 170917, at *31 (E.D.N.Y. Nov. 30, 2012) ("The courts in this Circuit have generally declined to find that transfers (or denials of transfers) amount to adverse employment actions, even in the context of a retaliation claim, where the action results merely in 'an inconvenience, such as an increased commute or unfavorable hours.' "). In fact, the only evidence submitted by Plaintiff is that she herself requested the transfer, and that her experience in the OLED project was positive. By virtue of her own allegations, Plaintiff's transfer to the OLED division cannot constitute an adverse employment action, even under the relaxed standard for retaliation claims.

## B. But–For Causation

Because the Court has determined that Plaintiff did not suffer an adverse employment action, the Court does not need to evaluate Plaintiff's retaliation claim under the but-for causation standard. However, even if Plaintiff could establish that she was subjected to an adverse employment action, her retaliation claims would fail because she cannot establish but-for causation.

The "but-for" causation standard "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Nassar*, 133 S.Ct. at 2533. As explained by one court:

To establish the requisite causal connection between the filing of [an] administrative complaint[ ] and the adverse employment action[ ] ... suffered, [the plaintiff] must show that [the employer] would not have taken action but for [the] protected activity. As the Second Circuit has made clear, when an adverse employment action is 'part of an extensive period of progressive discipline,' and 'gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise.'

*Chinnery v. N.Y. State Office of Children & Family Servs.*, No. 10 Civ. 882(DAB)(FM), 2014 WL 1651950, at *12, 2014 U.S. Dist. LEXIS 60896, at *33 (S.D.N.Y. Apr. 25, 2014) (quoting *Slattery*, 248 F.3d at 95).

Plaintiff claims that she was denied promotions and was subjected to a hostile work environment dating back to 2005—before she made her internal complaint. Accordingly, to the extent that Plaintiff claims she was denied further promotions and subjected to further harassment after making her complaint, she is unable to demonstrate "but-for" causation, because according to her version of events, the alleged adverse actions occurred before she ever complained about discrimination and nothing changed after she made a complaint. *See Wolf v. Time Warner, Inc.*, 548 Fed.Appx. 693, 695–96 (2d Cir. 2013) ("In light of the evidence in the record indicating that [the employer] had received numerous complaints about [the employee] and had placed her on a probationary program, all before receiving her discrimination complaint, we cannot conclude that 'but for' her complaint, she would not have been fired."); *Kishia v. Coca Cola Refreshments USA, Inc.*, No. 12 Civ. 234(BMC), 2014 WL 5587349, at *20, 2014 U.S. Dist. LEXIS 155565, at *51 (E.D.N.Y. Nov. 3, 2014) (noting that any

retaliation claims before Plaintiff engaged in her protected activity "fail as a matter of law."); *Dixon v. Int'l Fed'n of Accountants*, No. 09 Civ. 2839(HB), 2010 WL 1424007, at *6–7, 2010 U.S. Dist. LEXIS 35348, at *23 (S.D.N.Y. Apr. 9, 2010), *aff'd*, 416 Fed.Appx. 107 (2d Cir.2011) ("Here, [plaintiff] was subjected to repeated critiques and complaints about her management and performance skills before she ever lodged any complaints about discrimination and, as such, her retaliation claim must be dismissed."). Moreover, with respect to the transfer to OLED, again, it is undisputed that Plaintiff requested the transfer, thus defeating any argument that Defendants' alleged retaliatory animus was the but-for cause of the transfer.

## IV. Plaintiffs Claims Against the Individual Defendants

Plaintiff's fifth, sixth, seventh, and eighth causes of action seek to hold defendants Moore, David Dawson–Elli, Cynthia Giroux, and Marc Giroux liable under the New York State Executive Law for "aiding and abetting" Corning in its alleged acts of gender discrimination and retaliation. (Dkt. 50 at ¶¶ 133–48). Defendants argue that Plaintiff cannot establish aider and abettor liability because (1) liability must first be established as to the employer before accessory liability can be found as to the alleged aider and abettor, and (2) Plaintiff cannot demonstrate that the individual Defendants actually participated in the conduct giving rise to the claim of discrimination. (Dkt. 186–1 at 25–26).

As an initial matter, federal courts have supplemental jurisdiction over state-law claims that are " 'so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.' " *Kolari v. New York–Presbyterian Hosp.*, 455 F.3d 118, 121–22 (2d Cir.2006) (quoting 28 U.S.C. § 1367(a)). The Court will exercise supplemental jurisdiction over Plaintiff's aider and abettor claims brought pursuant to the New York State Executive Law because they form part of the same case or controversy as Plaintiff's federal discrimination claims. *See Hanley v. Chi. Title Ins. Co.*, No. 12 Civ. 4418(ER), 2013 WL 3192174, at *10 n. 7, 2013 U.S. Dist. LEXIS 88075, at *31–32 n. 7 (S.D.N.Y. June 24, 2013) (rejecting defendants' argument that it should decline to exercise jurisdiction over claims of individual liability because the claims did not "raise particularly complex or novel issues of state law ...."); *Duviella v. Counseling Serv.*, No. 00–CV–2424 (ILG), 2001 WL 1776158, at *17 n. 15, 2001 U.S. Dist. LEXIS 22538, at *58 n. 15 (E.D.N.Y. Nov. 1, 2001), *aff'd*, 52 Fed. Appx. 152 (2d Cir.2002) (exercising supplemental jurisdiction over plaintiff's aider and abettor claims).

"In contrast to Title VII, defendants may be held individually liable under the [NYSHRL]." *Ramirez v. Hempstead Union Free Sch. Dist.*, No. 13–cv–6429 (ADS)(WDW), 33 F.Supp.3d 158, 168, 2014 WL 3547374, at *6, 2014 U.S. Dist. LEXIS 97391, at *16–17 (E.D.N.Y. July 16, 2014). Specifically, the NYSHRL provides that "it shall be an unlawful discriminatory practice 'for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or attempt to do so.' " *Feingold v. New York*, 366 F.3d 138, 157 (2d Cir.2004) (quoting N.Y. Exec. Law § 296(6)). To impose liability on an aider and abettor, a plaintiff must demonstrate that the alleged aider and abettor "actually participat[ed] in the conduct giving rise to a discrimination claim ...." *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir.1995); *see also Allessi v. N.Y. State Dep't of Corr. & Cmty. Supervision*, 16 F.Supp.3d 221, 226 (W.D.N.Y.2014).

It is well-settled that "[u]nder New York law, 'liability must first be established as to the employer/principal before accessorial liability can be found as to an alleged aider and abettor.'" *Redd v. New York State Div. of Parole,* 923 F.Supp.2d 371, 392 (E.D.N.Y.2012) (quoting *DeWitt v. Lieberman,* 48 F.Supp.2d 280, 293 (S.D.N.Y.1999)); *see also Patane v. Clark,* 508 F.3d 106, 115 n. 7 (2d Cir. 2007) (noting that New York law requires employer/principal liability to be established before an individual without the power to hire or fire an individual can be liable as an aider and abettor).

The Court has determined that Plaintiff has no claim against Corning for discrimination or retaliation. Accordingly, there is no material issue of fact as to Plaintiff's claims against the individual defendants, and they are entitled to summary judgment on Plaintiff's "aider and abettor" claims against them.

## V. Plaintiffs Request to Amend her Complaint

In her motion papers, Plaintiff makes reference to her ability to amend her already-amended complaint. (*See* Dkt. 208–1 at 2). Even construing Plaintiff's reference to her ability to file an amended complaint as a request for leave to amend her complaint, such request is not made in the proper format, i.e., by formal motion with the amended pleading attached. *See* L.R. Civ. P. 15(a) ("A movant seeking to amend or supplement a pleading must attach an unsigned copy of the proposed amended pleading as an exhibit to the motion."). "[N]umerous courts have held that a 'bare request to amend a pleading' contained in a brief, which does not also attach the proposed amended pleading, is improper under Fed.R.Civ.P. 15." *Garnett–Bishop v. N.Y. Cmty. Bancorp, Inc.,* No. 12–CV–2285 (ADS)(ARL), 2014 WL 5822628, at *5, 2014 U.S. Dist. LEXIS 157806, at *13–14 (E.D.N.Y. Nov. 6, 2014)

(collecting cases); *see also Shah v. Helen Hayes Hosp.,* 252 Fed.Appx. 364, 366 (2d Cir.2007) ("A party may not use his or her opposition to a dispositive motion as a means to amend the complaint."). As a result, to the extent Plaintiff has requested leave to amend the already-amended complaint, her request is denied.

## CONCLUSION

The Court has considered Plaintiff's remaining arguments, and finds them to be without merit. For the foregoing reasons, Defendants' motion for summary judgment is granted, and Plaintiff's cross-motion for summary judgment is denied. Plaintiff's complaint is dismissed in its entirety.

SO ORDERED.